HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC HOOD,<br><br>    Plaintiff,<br><br>    v.<br><br>SOUTH WHIDBEY SCHOOL DISTRICT,<br><br>    Defendant. | CASE NO. C11-2024RAJ<br><br>ORDER |

## I.  INTRODUCTION

This matter comes before the court on three motions from Plaintiff Eric Hood. For the reasons stated below, the court DENIES all of them. Dkt. ## 63, 65, 70. The court orders Mr. Hood to pay the District $1,500 in attorney fees, and to do so no later than August 30, 2013. The court resets the deadline for filing dispositive motions to August 8. Any dispositive motion shall be noted no later than August 30.

## II.  BACKGROUND

Mr. Hood has four claims in this lawsuit against the South Whidbey School District (the "District"). Three of those claims depend on him proving that the District withheld documents that he or his union representatives requested in advance of a arbitration that followed the District's decision not to renew his teaching contract at the end of the 2009-2010 school year. The fourth is a claim that the District breached his teaching contract. By listing these claims, the court does not suggest that they have either legal or factual merit. The District has yet to challenge the legal merit of his claims.

ORDER – 1

1    Mr. Hood's disputes with the District extend far beyond the relatively narrow
2 claims in this suit. Among other things, he has filed dozens of Washington Public
3 Records Act ("PRA") requests with the District, and has sued in Island County Superior
4 Court for alleged violations of the PRA. He also sued in this court to challenge the
5 arbitrator's March 2011 ruling in favor of the District following the non-renewal of his
6 contract, along with the alleged failure of his union to properly represent him in the
7 arbitration. The court dismissed that suit in November 2012. No. 11-2025RAJ, Dkt.
8 # 38.
9    At about the same time, Mr. Hood, who had been representing himself, hired an
10 attorney. She filed an amended complaint in this action, the complaint that contains the
11 four causes of action described above. She withdrew from representing him just a few
12 months later.
13    Since then, Mr. Hood has attempted to pursue his claims on his own. The court
14 has already cautioned him about his conduct in discovery. In early May, the court
15 granted the District's motion for a protective order after Mr. Hood insisted that the
16 District answer nearly 500 requests for admission, very few of which had any hope of
17 advancing Mr. Hood's claims. When the court granted the motion, it declined to require
18 Mr. Hood to pay the District's attorney fees. It informed Mr. Hood, however, that his
19 conduct merited an award of fees to the District, and that the court had declined to
20 impose fees only as an exercise of lenience. May 6, 2013 ord. (Dkt. # 62) at 3-4. The
21 court "emphasize[d] . . that if Mr. Hood again cho[se] abusive discovery tactics," the
22 court would "at a minimum" require him to pay the District's attorney fees. *Id.*
23    Mr. Hood began his most recent flurry of motions with a motion to compel
24 responses to six requests for production of documents ("RFPs"). That motion is longer
25 than the court's local rules permit, and needlessly so. Much of the motion is devoted to a
26 recitation of Mr. Hood's PRA requests and his dissatisfaction with the District's

ORDER – 2

responses. Mr. Hood's PRA claims are not part of this litigation, and the court has already denied Mr. Hood's motion to amend his complaint to add those claims.

While the motion to compel was pending, Mr. Hood filed a second motion, this time requesting that the court order an *in camera* review of District documents subject to the attorney-client privilege in order to determine if the crime-fraud exception to the privilege applies. In that motion, Mr. Hood contended that the court should conduct an *in camera* review of documents listed in two "withholding logs" that the District issued in response to various PRA requests.

Then, while his first two motions were pending, Mr. Hood filed a third motion. This time, he accused the District's Superintendent of perjury in a declaration she filed in response to his motion to compel. He demanded that the court sanction the Superintendent, consider her false statements as evidence of bad faith, and extend discovery to permit him to take discovery regarding her allegedly false statements.

As the court will now discuss, none of Mr. Hood's motions have merit. Worse, in the last two motions, Mr. Hood lobs accusations of criminal conduct and fraud that find no support in law or fact. The District asked for an award of its attorney fees only as to the motion seeking *in camera* review, although it easily could have requested fees for having to respond to all three motions.

### III. ANALYSIS

**A.   Motion to Compel**

It is often difficult to determine what Mr. Hood wants in his motion to compel. He points to only a few specific documents that the District has not produced. He demands that the District produce a May 24, 2010 email from its former Superintendent to the District's insurer, along with all attachments. Mr. Hood obtained a heavily redacted copy of that email via a PRA request to the insurer. Having reviewed the email, the District's current Superintendent declares that the District cannot locate it in its system. She also

ORDER – 3

contends that the District already produced to Mr. Hood all of the attachments listed in the email. Mr. Hood provides nothing beyond unconvincing supposition to counter her explanation. He contends, in essence, that the District is lying about being unable to locate the email, and that it cannot know if it has produced the attachments if it has not actually located the email. The court has no reason to believe that the District is lying about the email. The redacted email that Mr. Hood obtained identifies the attachments in reasonable detail, giving the District a reasonable basis to believe it has already produced them.

Another specific example is Mr. Hood's complaint that the District did not produce a request for information that the EEOC sent after Mr. Hood filed a charge with that agency. The District already produced documents related to the EEOC charge, and it contends that it simply does not have the request for information, even if it once did. This explanation is plausible. Moreover, Mr. Hood's insistence that the District produce the document is puzzling, given that he already obtained it directly from the EEOC.

Mr. Hood also used his PRA requests to obtain copies of various invoices from the District's attorneys for representation related to Mr. Hood. From those invoices, and the brief descriptions of time billed contained therein, Mr. Hood imagines the existence of documents that the District has not produced. But he has nothing to rebut the District's declaration that it has produced all documents it could locate that are responsive to his RFPs.

One aspect of the District's responses to the RFPs gives the court some concern. Mr. Hood requested, in essence, every document in the District's possession that has anything to do with him, without any limitation as to time. The District confined its responses to the RFPs to the period from September 2008 through February 2011. It reasoned that those dates encompassed the last two academic years of Mr. Hood's employment and the time from non-renewal of his contract through his arbitration. That

ORDER – 4

limitation has some appeal, given the subject matter of this suit.  As noted, three of Mr. Hood's claims focus solely on the District's alleged failure to properly respond to his arbitration representatives' requests for information in late 2010 and early 2011.  His only other claim is for a breach of contract based on the District's conduct in evaluating him, placing him on probation, and eventually deciding not to renew his contract.  That conduct took place only in the final years of his employment.  Nonetheless, it is possible that the District is being too restrictive.  It is possible that there are documents prior to the beginning of the 2008 academic year that would shed light on later events.  It is also possible that documents created after the February 2011 arbitration would shed light on Mr. Hood's claims.

In another case, the court would perhaps take a closer look at the District's unilateral decision to limit the temporal scope of its document production.  Two factors counsel against that decision.  First, the court is firmly convinced that the District's responses to Mr. Hood's numerous PRA requests, coupled with its production in this case, cover essentially any document that has anything to do with Mr. Hood.  Mr. Hood has failed to convince the court that the District could have reasonably done more to respond to his RFPs.  Second, Mr. Hood's motions leave the court convinced that he is seeking additional documents not because he needs them to pursue his claims, but because he seeks to burden the District.  The court will not assist him.

The court also declines to force the District to prepare a privilege log specific to this litigation.  The District has convinced the court that any documents it has withheld are adequately described in the withholding logs it prepared in response to Mr. Hood's PRA requests.  The only exception is for documents related to the District's consultation with its attorneys since Mr. Hood filed his current lawsuits.  Those documents are privileged, or so likely to be privileged that the faint possibility that one or more of them is discoverable does not justify the burden of creating a privilege log.

ORDER – 5

### B.     Mr. Hood's Accusations of Fraud and Perjury

As noted, Mr. Hood claims that the District improperly withheld documents from him in advance of his February 2011 arbitration.  That arbitration was necessary, in his view, only because some employees at the District conspired not to renew his contract.  As the court understands it, Mr. Hood believes that those employees violated Washington law and District policy by deciding to end his employment before concluding (or perhaps before even beginning) various procedural steps that law and policy require.  Through his PRA request, he has learned the wholly unsurprising fact that the District consulted with its attorneys both during the time it considered whether to retain him as a teacher and during the time it gathered documents in response to pre-arbitration requests from his union representatives.

From those bare facts, Mr. Hood contends that he has made at least a threshold showing that the crime-fraud exception to the attorney-client privilege applies to the consultations between the District and its attorneys.  His contention is specious.  The crime-fraud exception applies only to communications a client makes to her attorney for the purpose of obtaining the advice to further a planned crime or fraud.  *United States v. Zolin*, 491 U.S. 554, 563 (1989).  If a party presents "evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability," the court may conduct an *in camera* review.  *Id.* at 574-75.  Mr. Hood has presented evidence that supports only the reasonable belief that the District consulted its attorneys about its legal obligations both with respect to deciding whether to continue Mr. Hood's employment and with respect to responding to his pre-arbitration requests for information.  There is nothing except Mr. Hood's imagination to support the notion that the District sought advice to further the commission of a crime or fraud.

Not content to accuse the District of conspiring to commit crimes or fraud, Mr. Hood accuses its current Superintendent of perjury.  The current Superintendent began

ORDER – 6

work at the District in July 2011, more than a year after Mr. Hood last taught at the District, and several months after his arbitration. Prior to that, she worked in New York. In her declaration in response to Mr. Hood's motion to compel, the Superintendent explained how the District came to produce approximately 400 pages of documents in response to a PRA request. Those documents all came from eight binders that her predecessor had created in the process of Mr. Hood's arbitration and later proceedings. There is no indication that the additional documents contained anything of particular importance. Mr. Hood does not dispute that he already had many of them. In explaining her discovery of the binders, the Superintendent declared that when she "first began working at the District, [she] was unaware that [her] predecessor maintained a separate file of binders relating to Mr. Hood's arbitration and then his subsequent administrative complaints." Moccia Decl. (Dkt. # 67) ¶ 27.

"Perjury!" Mr. Hood declares. Through another of his PRA requests, he obtained a June 15, 2011 email that the Superintendent's predecessor sent to several people, including outside counsel and the soon-to-be Superintendent. Hood Decl. (Dkt. # 73), Ex. 2. That email excerpts one of Mr. Hood's appearances at a District Board meeting, in which he elaborated on his complaint regarding the District's alleged false reporting of enrollment figures. *Id.* The former Superintendent wrote that his attendance at the meeting (and a letter Mr. Hood wrote to a state senator) were part of a "long series of complaints, appeals, requests for data and information, allegations of impropriety," and more. *Id.* He explained that the "documentation of our dealings with Mr. Hood fills eight binders, filed sequentially by month over a three year period of time and these binders are now filed, at the direction of our attorney, in the vault at the Service Center." *Id.* In Mr. Hood's view, this is proof that the current Superintendent knew about the eight binders even before she began working, and thus proof that she lied to the court when she declared that she discovered them later.

ORDER – 7

"Absolutely not perjury!" the court declares. The Superintendent explains persuasively that the email Mr. Hood relies on was one of many she received at an account the District created for her before she began working. Although she may have reviewed the email after she began work, she made no note of it, and forgot about it. The Superintendent has business other than attending to Mr. Hood's campaign against the District, and it is entirely plausible that she would not have paid much attention to an email touching on a dispute she had yet to confront. Whereas Mr. Hood is apparently willing to devote substantial time to his campaign against the District, the Superintendent has many other responsibilities. Putting aside the Superintendent's reasonable explanation, the court also observes that she had nothing to gain from lying to the court. By the time she received the email, Mr. Hood had been terminated and his arbitration completed. She unquestionably had no role in the alleged withholding of documents prior to the arbitration. If, as Mr. Hood insists, she was aware of the binders since June 2011, what could she possibly gain by telling the court otherwise in response to Mr. Hood's motion to compel? Mr. Hood's motion offers no answer to that question.

Because there is no evidence of perjury, there is no reason for the court to grant Mr. Hood's motion to re-open discovery and consider sanctions against the Superintendent.

Although there is no evidence of perjury, and no reason to sanction the Superintendent, there is ample evidence that Mr. Hood will continue to file frivolous motions unless the court sanctions him. Mr. Hood is fortunate in that the District requested that he pay its attorney fees only for its response to his motion for *in camera* review. The District has produced evidence that it incurred at least $2,775 in attorney fees for that response. The court is typically reluctant to impose sanctions on pro se litigants, but sanctions are appropriate in this case. The court warned Mr. Hood that he would face sanctions if he continued his improper conduct in discovery. Mr. Hood

ORDER – 8

nonetheless persisted, culminating in two motions with baseless accusations of fraud and perjury. As a final act of leniency, the court will require Mr. Hood to pay only $1,500 of the District's attorney fees. He has now exhausted the court's lenience.

## IV.  CONCLUSION

For the reasons stated above, the court DENIES each of Mr. Hood's motions. Dkt. ## 63, 65, 70. The court orders Mr. Hood to pay the District $1,500 in attorney fees, and to do so no later than August 30, 2013. The court resets the deadline for filing dispositive motions to August 8. Any dispositive motion shall be noted no later than August 30.

DATED this 31st day of July, 2013.

*(signature)*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9