HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERIC HOOD,

       Plaintiff,

    v.

SOUTH WHIDBEY SCHOOL DISTRICT,

       Defendant.

CASE NO. C11-2024RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a host of motions.  Defendant, the South Whidbey School District, has asked the court to enter summary judgment against Plaintiff Eric Hood's claims.  All of those claims rely on Mr. Hood's central assertion that the District withheld documents leading up to a February 2011 arbitration in which the arbitrator determined that the District had just cause not to renew Mr. Hood's teaching contract.  Mr. Hood not only seeks summary judgment on his claims, he has moved for relief from the arbitration award (invoking Federal Rule of Civil Procedure 60(b)), has moved three times for reconsideration of the court's prior order sanctioning him for filing frivolous motions, and in February 2014, he filed two more motions (one for leave to amend his complaint and another for relief based on depositions he took in his suit pending in state court).  For the reasons stated herein, the court GRANTS the District's motion for summary judgment (Dkt. # 85) and DENIES all seven of Mr. Hood's motions. Dkt. ## 84, 90, 96, 99, 100, 103, 104.  The clerk shall enter judgment for the District.

ORDER – 1

## II.   BACKGROUND

At the end of the 2009-2010 academic year, the District decided not to renew Mr. Hood's teaching contract.  Mr. Hood had been a teacher in the District for many years. He worked the final five of those years at Bayview High School.  For the last two of those years, Mr. Hood was under the supervision of Director David Pfeiffer.  Mr. Pfeiffer placed Mr. Hood on a teacher improvement plan in early 2010.  He also recommended that the District not renew Mr. Hood's contract.  The District's Superintendent at the time, Dr. Fred McCarthy, supported the recommendation.  The District informed Mr. Hood that it would not renew his contract.

Mr. Hood wished to contest the District's decision.  He decided against requesting an administrative hearing via RCW § 28A.405.300, and instead filed a grievance invoking the collective bargaining agreement ("CBA") between the District and the teacher's union to which he belonged.  The parties chose the Honorable Robert H. Alsdorf, a retired Washington judge, to arbitrate the dispute.  The union assigned two lawyers to represent Mr. Hood in the grievance, including pre-arbitration discovery and the arbitration itself.

Mr. Hood lost at arbitration.  Judge Alsdorf issued a written de novo determination of whether Mr. Hood's evaluation process had been fair and reasonable.  He concluded not only that the District had met its burden to prove that Mr. Hood had fallen short in several areas of evaluation, but that the District had proven that the evaluation was based on Mr. Hood's merits as a teacher, not because of any bias, prejudice, or desire to retaliate against Mr. Hood.

Since Judge Alsdorf's March 1, 2011 written decision resolving the arbitration, Mr. Hood has lobbed accusations of impropriety against almost everyone involved.  He filed a complaint against Judge Alsdorf.  He has complained to state legislators, the Washington Attorney General, and others.  He sued the District and the union for choosing Judge Alsdorf rather than an arbitrator from a list referred to in the CBA.  This

ORDER – 2

1
2
3
4

court dismissed that suit in November 2012.  Case No. C11-2025RAJ (Dkt. # 38) (Nov. 26, 2012 order granting motion to dismiss).  The court ruled that "with respect to Mr. Hood's claims arising from the arbitration of his grievance, he has not stated and cannot state claims that are cognizable in federal court."  *Id.* at 6.

5
6
7
8
9
10
11
12

What remained was this suit, which Mr. Hood filed against the District (and the union) at the same time he filed the suit the court just mentioned.  When Mr. Hood filed the suit (without the assistance of an attorney), he claimed that the District had violated Title VII of the Civil Rights Act of 1964 and the federal Age Discrimination in Employment Act.  Before the court considered the merits of those claims, Mr. Hood retained an attorney who filed an amended complaint.  The amended complaint deleted the claims the court just mentioned and replaced them with four causes of action, this time solely against the District.

13
14
15
16
17
18
19
20
21
22

Each of the four causes of action relies on a common set of factual assertions.  Mr. Hood contends that he and his union representatives requested documents in preparation for the arbitration, and that the District represented that it had fully and completely responded to those requests.  Mr. Hood relied on those representations by proceeding to arbitration.  Since Judge Alsdorf's award, Mr. Hood has invoked the Washington Public Records Act ("PRA") to request additional documents from the District.  From the District's responses, the most significant of which came in September 2012, he learned that the District had not produced some documents that he asserts were responsive to the requests his union representatives made to prepare for the arbitration.  He contends that the allegedly withheld records were material to the arbitrator's decision.

23
24
25
26
27

Mr. Hood states four causes of action based on those facts.  In his sole federal claim, he contends that the District deprived him of access to the courts in violation of 42 U.S.C. § 1983.  Invoking Washington law, he contends that the District's false statements regarding the completeness of its pre-arbitration discovery responses make the district liable for fraudulent or negligent misrepresentation.  He claims that the District

28

ORDER – 3

1
2
3

fraudulently procured the arbitration award.  Finally, he asserted that the District violated an implied contractual duty of good faith and fair dealing, although he did not specify the contract from which the duty arose.

4
5

The District filed a motion for summary judgment against all of those claims.  The court will address that motion first, then consider Mr. Hood's seven motions.

6

### III.   THE DISTRICT'S SUMMARY JUDGMENT MOTION

7
8
9
10
11
12
13
14
15
16
17
18

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

19
20
21
22
23
24
25

Although the court will briefly consider each of Mr. Hood's causes of action, all of them fail for essentially the same reason: there is no evidence that Mr. Hood suffered an injury as a result of the District's alleged withholding of discovery in advance of the arbitration.  The mere withholding of documents (even assuming that occurred) is not an injury that entitles him to relief.  The court observes that since June 2012, he has been pursuing a suit invoking the PRA in Island County Superior Court (No. 12-2-00475-1). The court suggests no opinion on whether the District lived up to its obligations when

26
27
28

ORDER – 4

1   responding to Mr. Hood's PRA requests.[1]  But unlike the PRA, which a governmental

2   unit can violate merely by failing to properly respond to a request, each of the claims Mr.

3   Hood brings in this lawsuit require him to prove an injury *as a result of* the alleged

4   withholding of documents.

5          Strewn among Mr. Hood's seven motions as well as many of the motions he filed

6   previously are examples of documents that the District allegedly did not produce in

7   advance of the arbitration.  As to each of them, Mr. Hood fails to offer evidence or

8   argument from which any finder of fact could conclude that, if the District had produced

9   them, there is any likelihood that the result of the arbitration would have been different.

10  Take, for example, a June 22, 2010 email in which District officials discuss the decision

11  not to renew Mr. Hood's teaching contract.  In it, a representative of the District Board

12  discusses getting guidance from any attorney about "just and sufficient cause" for

13  termination, and also explains to Mr. McCarthy that the Board hopes to ensure that "all

14  [his] hard work on this issue [is not] wasted because the 'I's' weren't dotted and the 't's'

15  weren't crossed."  Dkt. # 104-2, Ex. 8.  Mr. Hood contends that this email would have

16  been material at the arbitration because it "discusses Hood's non-renewal as a foregone

17  conclusion."  Pltf.'s Mot. (Dkt. # 104) at 6.  This argument is wholly unpersuasive.  Why

18  would it have mattered to the arbitrator that the Board sought legal advice about just

19  cause for termination?  Why would it have mattered that the Board commented on the

20  work Mr. McCarthy (and Mr. Pfeiffer) had already done to document reasons for not

21  renewing Mr. Hood's contract?  And even if the email actually showed that Mr. Hood's

22  termination was a "foregone conclusion," why would that matter to the arbitrator?

---

[1] Although the court already denied Mr. Hood leave to amend his complaint to add claims based
on the PRA, Mr. Hood persists in raising arguments that are relevant only to a PRA claim.  For
example, in his most recent motion, he complains about several instances in which the District
improperly withheld documents *in response to his post-arbitration PRA requests. E.g.*, Pltf.'s
Mot. (Dkt. # 104) at 5-6.  In his own motion for summary judgment, he devotes much of his
argument to whether the requests his union representatives made before the arbitration are
subject to the PRA.  These allegations make no difference in this lawsuit.  What matters is what
documents the District "withheld" in advance of the arbitration, and whether those documents
would have made any difference at the arbitration.

ORDER – 5

1    Regardless of when District officials decided that they wanted to end Mr. Hood's

2    employment, the arbitration decision makes clear that they had just cause to do so.  That

3    would be the case regardless of when District officials made their decision.

4            Similarly, Mr. Hood laments that the District produced only 100 or so of

5    approximately 650 attendance sheets for his classes.  But Mr. Hood did nothing at the

6    arbitration with the 100 records he did receive.  There is no evidence that he or his

7    representatives pressed any argument related to attendance records.  There is no evidence,

8    in short, that if Mr. Hood had all 600 attendance records, it would have had any impact

9    on the arbitration.

10           The court declines to discuss each of the documents Mr. Hood claims were

11   withheld.  It suffices for purposes of this order to note that, heeding the court's obligation

12   to take all inferences in Mr. Hood's favor, no one could infer from any of the documents

13   to which he points that they would have made any difference at his arbitration.

14           The court also notes that to even discuss what impact the allegedly withheld

15   documents might have had at the arbitration is to put the proverbial cart before the horse.

16   For that discussion to matter, the court must assume that the District actually withheld

17   documents during arbitration discovery.  Mr. Hood has pointed to some documents that

18   the District did not produce in advance of arbitration.  What he has not done is to

19   demonstrate that the District was required to produce those documents.[2]  It is not enough,

20   at this late stage, to posit that the documents might have come within the scope of the

21   document requests that Mr. Hood's union representatives made.  He must show that his

22   union representatives pursued those requests in such a way that it would have been

23   apparent to the District that they were within the scope of those requests.  Contrary to

24   formalized version of discovery that Mr. Hood envisions, discovery is a fluid process.  It

25   is common for attorneys to agree that certain documents, even though they might fall

26

27   [2] Again, the court takes no position on whether Mr. Hood's pre-arbitration requests come within
     the scope of the PRA; those claims are not before the court.

28   ORDER – 6

1   within the literal scope of a discovery request, need not be produced.  It is common for

2   attorneys to discuss the need to search particular locations for additional documents and

3   to agree that it is unnecessary to do so.  It is universally the case among competent

4   attorneys that the choice to pursue additional discovery is made by reviewing existing

5   discovery to determine if there are any documents that they expected to have received

6   that appear to be missing.  Put simply, on this record, there is no basis for any finder of

7   fact to conclude that the District produced less discovery than Mr. Hood's union

8   representatives demanded.  Mr. Hood does not provide evidence from his union

9   representatives to support his assertion that they requested documents that they did not

10  receive.  Absent that evidence, there is no basis to conclude that the District actually

11  "withheld" documents before the arbitration in a manner that is significant to *this* lawsuit.

12  Again, the court suggests no opinion on whether the District met its PRA obligations.

13          The observations the court has just made are fatal to each of Mr. Hood's claims.

14  Some of them fail for other reasons as well.

15  **A.      Denial of Access to the Courts**

16          Mr. Hood's sole federal claim invokes 42 U.S.C. § 1983, which provides a remedy

17  for people deprived of civil rights by officials acting under color of state law.  Courts

18  have recognized a constitutional right of access to the courts, most often in cases in which

19  prisoners challenge institutional impediments to their pursuit of legal relief.  *E.g.*, *Bounds*

20  *v. Smith*, 430 U.S. 817, 821-22 (1977); *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir.

21  2011) (recognizing "two types of access to court claims: those involving prisoner's right

22  to affirmative *assistance* and those involving prisoner's rights to litigate without active

23  *interference*") (emphasis in original).  Courts have also suggested that state officials who

24  cover up evidence during litigation can be liable for denying access to courts.  *E.g.*,

25  *Delew v. Wagner*, 143 F.3d 1219, 1222-1223 (9th Cir. 1998) (discussing claim based on

26  police officers' failure to properly collect evidence at accident scene); *Morales v. City of*

27  *Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (discussing claim based on destruction

28  ORDER – 7

1
2
3
4
5
6
7

of records and false testimony by police officers in civil proceeding).  To prove a denial of access to the courts, a plaintiff must prove actual injury arising from the official misconduct to which she points.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."); *see also Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (recognizing "actual injury" requirement from *Lewis*).

8
9
10
11
12
13
14

Mr. Hood fails to state an actual injury.  Even taking every inference in his favor, no reasonable finder of fact could conclude that the result of his arbitration would have been any different if the District had produced all of the documents about which he now complains.  Because Mr. Hood fails to state an actual injury, it is not necessary for the court to consider other aspects of his denial-of-access claim.  For example, the court is aware of no court that has concluded that conduct during arbitration can result in a denial of access to the courts, and the court suggests no opinion on that question.

15
16
17
18
19

The court also declines to decide whether a denial-of-access claim requires that the government intend to deprive the plaintiff of access to the courts.  For that reason, it need not decide whether Mr. Hood has any evidence from which a finder of fact could infer any District official acted with unlawful intent in when it allegedly withheld documents before the arbitration.

20
21
22
23
24
25

Additionally, the court declines to address the District's argument that Mr. Hood cannot hold the District, as opposed to the individual District officials who allegedly wronged him, liable via § 1983.  The District may be correct, but rather than penalize a pro se litigant (albeit one who had counsel for a few months) for suing the wrong party, then considering whether to permit him to amend his complaint to fix that defect, the court focuses solely on the merits of Mr. Hood's § 1983 claim.

26
27
28

ORDER – 8

**B.      Fraudulent or Negligent Misrepresentation**

Mr. Hood's failure to assert an actual injury arising from the withholding of documents is fatal to his fraud and negligent misrepresentation claims as well.  Because that is the case, the court does not resolve two other disputes.  First, it will not decide whether the District is correct that it and its employees are immune in a subsequent suit for damages arising from conduct they engaged in as parties to an arbitration.  Second, the court will not decide the impact of Mr. Hood's failure to follow Washington's pre-suit notice-of-claim provision for suits against governmental units.  Mr. Hood does not dispute that he failed to give the District at least 60 days to review his pre-suit claim, as the law requires.  RCW 4.96.020(4).  The District, however, relies solely on authority that predates the 2009 amendments to the notice-of-claim statute.  *E.g.*, RCW 4.96.020(5) ("With respect to the content of claims under this section and all procedural requirements in this section, this section must be liberally construed so that substantial compliance will be deemed satisfactory.")

**C.      Fraudulent Procurement of Arbitration**

Both Washington's version of the Uniform Arbitration Act and the Federal Arbitration Act permit a party to vacate an arbitration award in court if the award was procured by wrongful conduct.  RCW 7.04A.230(1)(a) (permitting vacatur if the "award was procured by corruption, fraud, or other undue means); 9 U.S.C. § 10 (same).  A plaintiff must pursue those remedies promptly.  RCW 7.04A.230(2) (requiring a plaintiff seeking vacatur on the grounds of corruption or fraud to file motion to vacate "within ninety days after such a ground is known or by the exercise of reasonable care should have been known by the movant"); 9 U.S.C. § 12 (requiring notice of a motion to vacate an award "within three months after the award is filed or delivered").

Mr. Hood's request to vacate the arbitration award, which he first made on December 10, 2012, is untimely.  Assuming, for the sake of argument, that both the FAA and Washington law would permit him to make that request 90 days (or three months)

ORDER – 9

1   after he received documents that had been previously undisclosed, his motion was at most

2   timely as to documents that he received for the first time in the District's September 11,

3   2012 PRA response.  Mr. Hood ignores uncontroverted evidence that the District also

4   produced documents in August and October 2011.  There is little question that Mr. Hood

5   knew before September 2012 that the District had not disclosed documents.  He filed his

6   PRA suit, for example, in June 2012.  The pleadings before the court contain many

7   admissions that he was aware that certain documents (for example, his class attendance

8   records) were missing well in advance of September 2012.  In short, he knew more than

9   90 days before he sought to vacate the arbitration decision that the District had withheld

10  at least some of the documents that he now claims are material to the arbitration.  Even if

11  the District disclosed additional documents within 90 days of his request, nothing

12  prevented him from suing sooner.  Based on the evidence before the court, no finder of

13  fact could conclude that he timely sued to vacate the arbitration award.

14          In addition, the documents to which Mr. Hood points do not support the

15  conclusion that the District procured the arbitration award through corruption, fraud, or

16  other undue means.

17          Even if his suit for vacatur was not untimely, and even if there were evidence of

18  fraudulent procurement of the arbitration award, his claim would still fail for his failure

19  to provide evidence from which any fact finder could conclude that the result of the

20  arbitration would have been different if the District had produced the documents about

21  which he complained.

22  **D.      Breach of Implied Contractual Duty**

23          Although Mr. Hood's complaint is silent on the matter, Mr. Hood's response to the

24  District's summary judgment motion makes clear that he claims that the District breached

25  the CBA, or at least breached the duty of good faith implicit in that contract.  He points

26  out that the CBA mandates that the District maintain a single personnel file for each of its

27  employees, and that it obligates the District to disclose any information necessary to

28  ORDER – 10

process a grievance or a complaint.  Mr. Hood has not established that he is a third-party beneficiary of this aspect of the CBA, but the court assumes that he is for purposes of this order.

As with Mr. Hood's other claims, his failure to prove an injury is fatal to his CBA-based claim.  The CBA does not provide a freestanding right to receive information, it provides a right to receive information necessary to pursue a grievance or a complaint.  Thus, absent evidence of an inability to pursue a grievance or complaint as a result of a failure to disclose information, a mere failure to disclose information is not a breach of contract or any implied duty.  Even if Mr. Hood had evidence that the District unlawfully maintained files relating to him or breached its duty to disclose information (the court does not suggest that he has such evidence), Mr. Hood's failure to provide evidence of an injury arising from those practices means that he cannot prevail on his contract-based claim.

### IV.  MR. HOOD'S MOTIONS

As has been his practice throughout this case, Mr. Hood has filed a host of motions.

He filed his own motion for summary judgment, which the court must deny for the same reasons that led it to grant the District's motion.

He filed a motion for relief from the arbitration award, but rather than invoking the sections of the Uniform Arbitration Act or Federal Arbitration Act that expressly permit him to vacate an arbitration award, he invoked Federal Rule of Civil Procedure 60(b).  Rule 60(b) permits relief from a "final judgment, order, or proceeding" in narrow circumstances.  No one has confirmed the arbitration award as a judgment of any court, much less this court.  Similarly, the arbitration award is not an "order" or "proceeding" of a federal court, and is thus not subject to challenge via Rule 60(b).  Even overlooking these threshold obstacles, Mr. Hood's failure to provide evidence of an injury stemming

ORDER – 11

1      from the alleged withholding of documents prior to arbitration is fatal to his Rule 60(b)

2      motion.

3              He filed three motions for reconsideration of the court's July 31 order, in which

4      the court required him to pay $1,500 of the District's attorney fees for filing frivolous

5      motions.  All three of those motions were untimely, because Mr. Hood filed each of them

6      more than fourteen days after the July 31 order.  Local Rules W.D. Wash. LCR 7(h)(2).

7      In none of those motions did he demonstrate "manifest error" in the July 31 order or

8      show that "new facts or legal authority *which could not have been brought to [the*

9      *court's] attention earlier with reasonable diligence*" warranted a different result.  LCR

10     7(h)(1) (emphasis added).  But even if the court were to overlook those shortcomings,

11     Mr. Hood's motions present neither evidence nor argument that would have led the court

12     to issue a different ruling on July 31.

13             Mr. Hood moved to amend his complaint.  He did so on February 18, more than

14     two years after he filed his complaint, and long after the March 2013 deadline for filing

15     amended pleadings.  In May 2013, the court denied Mr. Hood's last attempt to amend his

16     complaint, explaining that "[it] is too late to amend claims in this action."  May 6, 2013

17     ord. (Dkt. # 62) at 2.  It is now much too late.  The court observes, however, that at least

18     some of the amendments Mr. Hood proposed are immaterial.  His request to name the

19     individual District officials as defendants is not material because the court has not denied

20     him relief because he sued the wrong parties.  He asks to clarify his pleading regarding

21     his denial-of-access claim, but that is not necessary.  The court's ruling today is not based

22     on Mr. Hood's pleadings, it is based on his failure to present evidence of an actual injury.

23     Finally, Mr. Hood asks to add a claim for retaliation in violation of the First Amendment.

24     The court expresses no views on the merits of such a claim (other than to observe that

25     Judge Alsdorf already concluded that the District did not have a retaliatory motive for its

26     actions), it merely rules that Mr. Hood has not shown good cause to add that claim so late

27     in these proceedings.

28     ORDER – 12

1    Finally, just a few days ago, Mr. Hood filed yet another motion, which he styled a

2    "Motion for Relief from Orders and Discovery Deadline and For Additional Discovery

3    and Reconsideration."  That motion is untimely to the extent it is a motion for

4    reconsideration.  The motion is based on recent testimony that various District officials

5    gave in depositions in Mr. Hood's state-court PRA lawsuit.  That testimony is perhaps

6    relevant to whether the District met its PRA obligations.  It does not provide the evidence

7    that is missing in this lawsuit – evidence that the District's withholding of documents

8    impacted the outcome of the arbitration.  It also provides no basis for reconsidering the

9    court's prior ruling that there is no evidence that the District's current superintendent

10   engaged in any wrongdoing when she claimed to be unaware of a collection of binders

11   containing documents pertaining to Mr. Hood.

## V.  CONCLUSION

13   For the reasons stated above, the court GRANTS the District's motion for

14   summary judgment (Dkt. # 85) and DENIES all seven of Mr. Hood's motions.  Dkt.

15   ## 84, 90, 96, 99, 100, 103, 104.  The clerk shall enter judgment for the District.

16   DATED this 3rd day of March, 2014.

18

19

20   The Honorable Richard A. Jones
     United States District Court Judge

28   ORDER – 13